WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>    Plaintiff,<br><br>v.<br><br>Tucson Electric Power Company,<br><br>    Defendant. | No. CV-25-00059-TUC-SHR<br><br>**Order Entering Consent Decree** |

Pending before the Court is the State of Arizona's Motion to Enter Consent Decree (Doc. 5). For the following reasons, the Court grants the Motion and enters the Consent Decree.

**I.   Background**

The State of Arizona brought this action against Tucson Electric Power Company ("TEP"), a potentially responsible party ("PRP"), to recover remedial costs the State has incurred and will incur from its cleanup of hazardous substances located on or originating from the Broadway Pantano landfill ("Site") located in Tucson, Arizona. (*See generally* Doc. 1.) Defendant TEP is the successor in interest for Tucson Gas & Electric Company which owned portions of the Site when hazardous waste was deposited at that location. (*Id.* ¶ 12.) The State of Arizona sought relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*. and the Water Quality Assurance Revolving Fund ("WQARF") program, A.R.S. § 49-281, *et*

*seq*. (*See* Doc. 1 ¶¶ 29–42; *see also* Doc. 5 at 2.)

Soon after filing the complaint, on March 13, 2025, the State filed its Notice of Settlement, which contained an unsigned consent judgment which would be subject to the Court's approval after a public notice and comment period under Arizona law. (*See* Doc. 4 at 1.) During the public notice and comment period, no public comments were received. (Doc. 5 at 10). Therefore, on April 28, 2025, the State filed the instant Motion to Enter the Consent Decree. (*See id.*). Under the Consent Decree, Defendant TEP has agreed to pay Plaintiff $90,713.08 to resolve the claims. (Doc. 5-1 at 85.)

## II. Standard

In determining whether to approve a consent decree under CERCLA, a court must determine whether the proposed settlement is procedurally fair, substantively fair, reasonable, and consistent with the purpose of CERCLA. *State of Arizona v. Nucor Corp.*, 825 F. Supp. 1452, 1456 (D. Ariz. 1992), *aff'd on other grounds*, 66 F.3d 213 (9th Cir. 1995); *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995). When performing its review, a court need not determine whether the settlement is the best possible settlement available. *City of Colton v. Am. Promotional Events, Inc.*, 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017).

## III. Discussion

To determine procedural fairness, courts "must look to the negotiation process and 'attempt to gauge its candor, openness, and bargaining balance.'" *Nucor*, 825 F. Supp. at 1456 (quoting *U.S. v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)). In the Motion, the parties state the "Consent Decree filed in this matter is the product of an arms-length negotiated settlement between the Parties." (Doc. 5 at 2). Moreover, the Consent Decree itself supports this assertion because it shows TEP was represented by independent counsel in these negotiations. (*See id.* at 95.) The Consent Decree also avers "the Parties agree that settlement of this matter and entry of this Consent Decree is made in good faith and in an effort to avoid further expenses of protracted litigation." (*Id.* at 81.) The Consent Decree was also publicly filed before it was finalized and subject to notice and comment.

Therefore, the Court finds the settlement agreement was the result of procedural fairness.

Substantive fairness "concerns the issues of corrective justice and accountability." *Nucor*, 825 F. Supp. at 1458. An agreement can be substantively fair so long as a party "bear[s] the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. Moreover, in determining the reasonableness of CERCLA settlements, courts will consider the "efficacy of the settlement in compensating the public for actual and anticipated remedial and response costs and the relative strength of the parties' litigating positions." *Nucor*, 825 F. Supp. at 1464. As part of this analysis, courts examine whether the settlement amount is proportional to the settling defendant's share of responsibility for the environmental damage. *Montrose*, 50 F.3d at 747; *Cannons*, 899 F.2d at 87.

The Court finds the Consent Decree is substantively fair and reasonable. The Arizona Department of Environmental Quality ("ADEQ") allocated liability for the hazardous waste remediation at the Site by incorporating "generally accepted allocation methodologies, which the U.S. Environmental Protection Agency ("EPA") has also adopted." (Doc. 5 at 4.) ADEQ established the following formula to allocate an individual PRP's cost by calculating the number of acres owned by the time they owned those acres, eventually arriving at 4.13% for TEP using this approach. (*Id.* at 9.) Next, an owner-PRP's overall cost allocation was calculated by multiplying the group percentage (7% for owners) by the individual PRP subgroup percentage (4.13% for TEP) then by the total estimated cost of remedial measures. (*Id.* at 8–9; Doc. 5-1 at 3.)

Although it appears TEP's settlement amount is based on an amount higher than the total remedial action cost stated in the Motion, this discrepancy does not disturb the Court's finding because information within the supporting documents reinforces the finding and it remains proportional. In the State of Arizona's Motion, it notes "ADEQ arrived at an *estimated* total remedial action cost of $25,236,012 for the Site." (Doc. 5 at 4 (emphasis added) (citing Attachment 3); *see also* Doc. 5-1 at 9 (Attachment 3).) Many estimates of recovery costs were included in the supporting materials for the Motion to Enter, none of which appear to align with the $25,236,012 figure purportedly from Attachment 3. (*See,*

*e.g.,* Doc. 5-1 at 3 ($28,290,350); *id.* at 9 ($29,659,308); *id.* at 5, 54 ($28,290,300).) According to the cost allocation methodology in the previous paragraph, TEP's share is .002891 or .2891% (4.13% X 7%) which would mean the settlement amount of $90,713.08 is based on a total remediation cost estimate of $31,377,751.64.

The State does not explain this discrepancy in its Motion, but the Court finds this settlement amount reasonable based upon its independent review of the record and the scientific and economic analyses therein. For example, the cost estimates within the record were calculated years ago, mainly in 2019, and explicitly anticipate rising costs over time, for example, noting a standard 3% inflation assumption. (*See* Doc. 5-1 at 54.) The record also alluded to a higher amount, $43,374,432.14, as an amount eligible for ADEQ to recover pending certain approvals, which shows ADEQ anticipated remedial costs to develop in the future above its 2019 estimates. (*Id.* at 5.) To the extent the settlement amount was based on an increased amount of projected costs associated with hazardous waste cleanup, the Court also affords some deference to ADEQ's judgment on the costs of cleanup. *See Arizona v. City of Tucson*, 761 F.3d 1005, 1014 (9th Cir. 2014) ("[I]if the district court finds that the ADEQ has expertise concerning the cleanup of the Site, it may afford 'some deference' to the ADEQ's judgment concerning the environmental issues underlying the CERCLA consent decrees at issue in this case."). Therefore, because the methodology was sound and the passage of time appeared to necessitate a higher estimate, this figure is substantively fair and reasonable.

Finally, the primary goals of CERCLA are to encourage early settlements and to ensure accountability from those responsible for any abandoned waste. *See Montrose* at 745–56. This helps further the goal of ensuring prompt site cleanups. *Nucor*, 825 F. Supp. at 1464. The parties' settlement agreement aligns with and furthers these goals. This settlement will streamline future litigation, if any, by removing a defendant from the case and will quickly transfer money into the cleanup fund. Further, it holds Defendant TEP accountable for its predecessor's precise contribution to the hazardous waste at the Site. Therefore, the Court will approve the proposed settlement because it furthers these two

goals of CERCLA.

**IV.  Conclusion**

Because the Consent Decree is substantively and procedurally fair, reasonable, and consistent with CERCLA's goals, the Court will grant the Motion to Enter.

Accordingly,

**IT IS ORDERED** the Motion (Doc. 5) is **GRANTED**. The Court approves the Consent Decree (Doc. 5-1 at 78–97) and contemporaneously signs the Consent Decree.

**IT IS FURTHER ORDERED** the Clerk of the Court shall docket in a separate entry the Consent Decree (Doc. 5-1 at 78–97) containing the Court's signature.

**IT IS FURTHER ORDERED** the Clerk of the Court shall enter judgment accordingly and close this case.

Dated this 2nd day of June, 2025.

*[signature]*
Honorable Scott H. Rash
United States District Judge